KC:JDB/JK
F.#2005R01635

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -                                06 CR 216 (ERK)

FNU LNU, also known as
    "Abu Hakim,"
    "Abdulhakeem Nour,"
    "Noureddine Malki,"
    "Almaliki Nour" and
    "Almalik Nour Eddin,"

        Defendant.

- - - - - - - - - - - - - - - - - X

<u>GOVERNMENT'S PRE-TRIAL MEMORANDUM OF LAW</u>

 

                        ROSLYNN R. MAUSKOPF
                        United States Attorney
                        Eastern District of New York
                        One Pierrepont Plaza
                        Brooklyn, New York  11201

 

John Buretta
Jeffrey Knox
Assistant United States Attorneys
    (Of Counsel)

PRELIMINARY STATEMENT

The government respectfully submits this pre-trial memorandum of law.  Jury selection is scheduled to commence on Tuesday, February 20, 2007.

The first part of this memorandum outlines the elements of 18 U.S.C. § 793(e) (Unauthorized Possession of National Defense Documents), the statute under which the defendant is charged.[1]  The second part outlines evidence the government may offer at trial to prove the charged offenses.

It is anticipated that the defendant will testify at trial.  It is also anticipated that the defense will assert that the defendant was authorized to possess the documents in question while in Iraq, that the defendant is honest, and that the defendant is loyal to the United States.

---

[1] Under separate cover, the government will submit a proposed jury charge to the Court.

<u>ELEMENTS OF 18 U.S.C. § 793(e)</u>

I.    <u>Overview of Statute and Elements</u>

The defendant is charged in the Indictment with four counts of violating 18 U.S.C. § 793(e).  Section 793(e) provides in relevant part:

> Whoever having unauthorized possession of, access to, or control over any document, writing, code book, signal book, sketch, photograph, photographic negative, blueprint, plan, map, model, instrument, appliance or note relating to the national defense, or information the possessor has reason to believe could be used to the injury of the United States or to the advantage of any foreign nation, . . . willfully retains the same and fails to deliver it to the officer or employee of the United States entitled to receive it . . . [shall be guilty of a crime].

To prove the defendant's guilt, the government must establish beyond a reasonable doubt that: (1) the defendant had unauthorized possession or control over documents relating to the national defense; and (2) the defendant willfully retained those documents and failed to deliver them to an officer or employee of the United States who is entitled to receive them.  The meaning of these elements, as defined in applicable case law, is set forth below.

## II.  The First Element

The first element comprises of two central parts: (1) "unauthorized" possession of (2) documents "relating to the national defense."

### A.  "Unauthorized Possession"

The phrase "unauthorized" has been interpreted to incorporate federal regulations governing those individuals entitled to receive classified information.  See United States v. Morison, 844 F.2d 1057, 1065-75 (4th Cir. 1988); United States v. Rosen, 445 F.Supp.2d 602, 622-24 (E.D. Va. 2006); see also United States v. Hung, 629 F.2d 908, 919 (4th Cir. 1980).  These federal regulations prohibit possession of classified information by anyone who does not have both a proper security clearance and a "need to know" the information at issue.  See 68 FR 15315, 15324 (Sec. 4.1(a)).  "Need to know" means a determination made by an authorized holder of classified information that a prospective recipient requires access to specific classified information in order to perform or assist in a lawful and authorized government function.  68 FR 15315, 15332 (Sec. 6.1(z)).  In addition, however, even with a proper security clearance and a "need to know," possession of classified information is not permitted other than at the official premises for maintaining that information.  See id., 15325 (Sec. 4.1(d)).  Thus, the term "unauthorized" in Section 793(e) prohibits possession of

classified information by (1) a person who does not hold a security clearance, (2) a person who holds a security clearance without the "need to know," or (3) a person who holds a security clearance and has a "need to know," but has removed the classified information from the official premises without authorization.[2]

   B.    "Relating to the National Defense"

      The "relating to the national defense" component of this element is a broad term which refers to United States "military and naval establishments and the related activities of national preparedness."  See, e.g., Gorin v. United States, 312 U.S. 19, 28 (1941); New York Times Co., 403 U.S. at 738-30.

      The fact that a document has been classified with a restricted classification (e.g., as Secret) is "highly probative of whether the information at issue is 'information relating to the national defense'."  Rosen, 445 F.Supp.2d at 623-24.

III. The Second Element

      As to the second, "willful retention" element, the government must prove that the defendant acted with a "specific intent to do some act, an act which the law defines as being

---

[2] The government does not anticipate any evidence at trial suggesting that the defendant was authorized to have the relevant documents in Brooklyn, where they were found.  Accordingly, the defendant's anticipated defense that he was authorized to have the relevant documents while in Iraq is legally irrelevant (in addition to being factually untrue).

illegal." United States v. Doyle, 130 F.3d 523, 540 (2d Cir. 1997); see also United States v. McGuiness, 35 M.J. 149, 153 (C.M.A. 1992) (defining wilfulness in the context of Section 793(e) as an intentional violation of a known legal duty). Here, that illegal act is the act of retaining the documents in issue.

To establish willfulness, the government is not required to prove "an intent to injure the United States or to benefit a foreign nation but only willful and knowing conduct." New York Times Co. v. United States, 403 U.S. 713, 738-30 & n.9 (1971) (Black, J., concurring); see also McGuiness, 35 M.J. at 153 (bad faith, as evidenced by a "sinister purpose to injure the United States" is not a component of the willfulness element).

Also in regard to this element, the government is not required to show that any officer or employee of the United States demanded return of the documents in issue, but need only establish that the defendant failed to return the documents. Compare 18 U.S.C. § 793(d) (requiring proof, as to "authorized possession" of national defense documents, that holder of documents refused to provide them to authorities upon "demand") with 18 U.S.C. § 793(e) (containing no "demand" requirement). See New York Times Co., 403 U.S. at 738-30 & n.9 (Black, J., concurring) (citing with approval Senate Report regarding enactment of Section 793(e) noting that, unlike Section 793(d),

Section 793(e) addresses "'[t]he dangers surrounding the unauthorized possession of such items'" which "'are self-evident, and it is deemed advisable to require their surrender in such a case, regardless of demand, especially since their unauthorized possession may be unknown to the authorities who would otherwise make the demand.'").

PROFFERED FACTS

The government sets forth below a proffer of facts it will offer to prove the defendant's guilt beyond a reasonable doubt.[3]

The defendant's true identity is unknown.  In 2003, the defendant applied for a position as a translator for L-3 Titan Communications ("Titan"), a contractor with the United States military.  Among other things, Titan provides contract translators to the Unites States military for assignment in Iraq.

Through fraud, the defendant obtained a position as a Titan translator, and a security clearance.  The defendant's fraud included lying on this job application about, among other things, his criminal history, his name, his date of birth, his birthplace and the birthplace of his parents.  The defendant told similar lies in completing the security clearance form (known as an "SF-86 Form") used to determine whether he qualified for

---

[3] The government provides this proffer without prejudice to offering other or different facts at trial.

clearance to have appropriate access to classified military national defense information.

The government will establish that Titan gave the defendant extensive training about handling classified documents. For example, the defendant was advised that, even with appropriate security clearance, he was still not permitted to see classified documents unless he had a "need to know." The defendant also learned that he was not allowed to possess information pertaining to the national defense, but only to view it, and only then when given specific authorization. The defendant was also advised that he was not permitted to transport any classified documents anywhere. In this regard, the defendant was advised that a separate clearance granting "courier" status was required to transport classified documents. The defendant was advised that he was not a "courier."

The defendant was also instructed not to initiate contact with locals when he arrived in Iraq, because this could compromise his own safety and the safety of other United States military personnel. The defendant was also informed that he was required to notify the United States government prior to any foreign travel.

The defendant acknowledged these limitations and others through, among other means, executing a series of documents the government will offer in evidence at trial.

The defendant was aware that the principal purpose of these limitations on the handling of national defense documents was to safeguard the lives of United States military personnel operating in Iraq.

Despite knowing all these limitations, the defendant willfully violated them.

During his initial assignment in Iraq, from approximately October 2003 to March 2004, the defendant was stationed at Al Taqqadam Air Base, also known as "TQ." TQ is located near Habaniya in an area west of Baghdad known as the "Sunni Triangle," a reference to the large number of deadly incidents in that area carried out by Sunni Muslim jihadists, insurgents and other anti-coalition forces. At TQ, the defendant worked as a "Cat II" (i.e., "Secret" level clearance) translator for military intelligence personnel in the 82nd Airborne Division of the United States Army (the "82nd Airborne").

While at TQ, the defendant wore a badge that gave him the ability to enter secure areas of the base where classified documents were stored. However, the defendant's clearance, and his badge, did not give the defendant authorization actually to view classified documents unless the defendant had a "need to know" specifically identified by supervising personnel.

The government will establish that the defendant also took national security documents from the 82nd Airborne. In

9

September 2005, hard copy classified documents from the 82nd

Airborne – prominently marked "Secret" – were recovered from the

defendant's apartment in Brooklyn.  Those documents include:

- A "fire report," Document #1 charged in Count One of the Indictment.  The fire report contains, among other things, specific information about types of United States artillery used to fire on anti-coalition locations, the coordinates of those locations, and the precise dates and times of the planned activities;

- A "synchronization matrix," Document #2 charged in Count Two of the Indictment, which provides information about 82nd Airborne strategies for interfacing with various different tribal groups in Iraq, and also identifies coordinates of locations suspected of containing weapons of mass destruction; and

- A "frago" report, Document #3 charged in Count Three of the Indictment, which provides information about specific routes and types of protection of pilgrims during the early 2004 "Hajj," or pilgrimage by Iraqis leaving Iraq by various roads to Mecca.

Military witnesses will testify that the defendant was

not authorized to possess these documents, either in Iraq or in

Brooklyn.

Another classified document – also marked "Secret" –

was found on a CD-Rom recovered from the defendant's Brooklyn

apartment.  The document, entitled "Mission Analysis," remains

classified, and is Document #4 charged in Count Four of the

Indictment.  Without identifying the specifics of the document,

the document contains, as a general matter, information about the

U.S. military's capabilities and limitations in Iraq, including

specific information concerning anti-coalition forces.

The government will establish that, during a pre-arrest interview, the defendant admitted to the FBI that he possessed classified documents in Brooklyn (specifically, Document #4, the "Mission Analysis" document), knew he had the classified information stored on unclassified electronic media, and knew that such storage and possession was not permitted.[4]  The defendant then proceeded to provide a false exculpatory explanation for why he had the classified information – i.e., that military personnel gave the defendant the classified information to help the defendant prepare certain "cultural awareness" classes the defendant provided to United States military personnel while in Iraq.  The defendant did not assert, however, that anyone authorized him to take the documents to Brooklyn.  The government will, in any case, establish through witness testimony and other evidence that the defendant's exculpatory explanation is in fact false.  No one authorized the defendant to take the classified documents for any purpose.

If the defense makes certain assertions, such as asserting the defendant's loyalty to the United States, that he has nothing to hide or that the defendant had no motive or opportunity to take the documents in issue or to disseminate them to others, then the government would offer additional evidence.

_____

[4] The defendant denied having any knowledge of the other classified documents recovered from his apartment.

Some of that evidence is set forth below.  The government would establish that the defendant had a motive to take the above classified documents because, among other reasons, the defendant supports Al Qaeda and the September 11 attacks and is opposed to the United States' presence in Iraq.  Forensic review of the defendant's computer hard drives, located in his Brooklyn apartment, uncovered an entire section of pro-Al Qaeda images downloaded by the defendant from the internet.[5]  (See Exhibit A hereto (examples of such images)).

The government would also establish that the defendant had an opportunity to provide stolen classified information to anti-coalition forces, because the defendant was in contact with numerous foreign nationals after the defendant's deployment at TQ ended.  Specifically, the defendant was in unauthorized phone and e-mail contact with a former United States Army source in Iraq known as "Kifah."  In addition, the defendant was in e-mail contact with Sunni sheiks in the Sunni Triangle – individuals from whom the defendant admitted taking bribes.  (Consistent with this admission, deposit records for the defendant's Greenpoint Bank account in New York reflect that the defendant deposited $11,500 in cash immediately upon returning from Iraq to the

---

[5] Thus, these images were not merely viewed by the defendant on the internet, but specifically downloaded and saved into a folder.

United States in late March 2004.)  The defendant also made an unauthorized trip to Jordan to meet with the sheiks.

In addition, the government would offer statements the defendant made during a post-arrest proffer with the government pursuant to a proffer agreement which permits those statements to be used if the defendant makes contrary assertions at trial.  The defendant's proffer statements include, among other things, an admission that the defendant deleted his e-mails in two e-mail accounts shortly before his arrest because he was concerned he was in trouble.

Dated:     Brooklyn, New York
           February 7, 2007

                              Respectfully submitted,

                              ROSLYNN R. MAUSKOPF
                              United States Attorney
                              Eastern District of New York
                              One Pierrepont Plaza
                              Brooklyn, New York  11201


John Buretta
Jeffrey Knox
Assistant United States Attorneys
     (Of Counsel)

13